**In re Anonymous No. 7 D.B. 87**

ECKELL, *Member,* July 29, 1988—Pursuant to rule 208(d), Pa.R.D.E., the disciplinary board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## HISTORY OF PROCEEDINGS

On February 6, 1987, a petition for discipline was filed charging respondent with five separate charges of disciplinary misconduct. All events giving rise to the charges occurred between 1981 and 1984 during which time respondent was employed as a member of the firm of [A], P.C. in [ ] County, Pa.

### Charge I
### The [B]-[C]-[D] Matter

In this charge, petitioner alleged that respondent transferred trust funds of [D] and the [C] estate from his firm's escrow account into his personal account. From his personal account, respondent added funds of his own and made a payment on behalf of the [Bs] to satisfy a court order directing the [Bs] to make such a payment. At the time in question, the [Bs] had moved to Arizona and were unaware of

the court order that had been entered against them. In addition, no one involved in the [C] or [D] matters were notified of the transfer of these funds out of trust.

## Charge II
### The [E] Matter

In this charge, petitioner alleged that respondent transferred funds received on behalf of his clients in a mortgage foreclosure action from the firm's escrow account to the office account. The funds were thereafter utilized by the firm in its normal course of business. The client was never advised that funds had been successfully collected on their behalf, nor were they advised that the transfer, out of trust, was being made.

## Charge III
### The [F] Matter

In this charge, petitioner alleged that respondent obtained a verdict in favor of the [Fs]. Judgment entered on the verdict was ultimately collected and the judgment marked satisfied by respondent. The proceeds of the judgment were placed in the office account and fee account of respondent's firm. The client was never advised that funds had been collected. Respondent had billed the client for services rendered in connection with this matter, the amount of which bill was disputed. Notwithstanding the dispute, respondent used the funds to satisfy the fee he claimed was due. Petitioner further alleged that respondent ignored the inquiries of respondent's local county bar association president and its fee dispute committee regarding settlement of the controversy.

## Charge IV
### The [G] Matter

In this matter, respondent is charged with receiving various payments on behalf of his client arising out of a personal injury action and a domestic case. All checks received were made payable to respondent and the client. After having the client endorse the checks, respondent placed the funds in the firm's trust account, indicating to the client that the funds would be used for payment of the client's medical bills. The petition charges a series of unauthorized transfers from the firm's escrow account to other accounts and utilization of the funds for paying support arrearages to client's ex-wife, reimbursing the firm for costs, and payment of respondent's fees.

## Charge V
### The [H] Matter

The fifth and final charge alleged that respondent transferred $500, received as a down payment for a property settlement in a divorce matter, to the firm's fee account.

In each of the five charges petitioner alleged that respondent had violated the following disciplinary rules:

(a) D.R. 1-102(A)(4), prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) D.R. 1-102(A)(6), prohibiting any other conduct adversely reflecting on the fitness to practice law; and

(c) D.R. 9-102(A), requiring that funds of clients be maintained in separate accounts and prohibiting commingling of funds of the lawyer with those of the client.

Charges II, III and IV further alleged that respondent had violated D.R. 9-102(B)(3), requiring a lawyer to maintain complete records and render appropriate accounts to the client regarding client funds in the possession of the lawyer.

Charges II, IV and V further alleged that respondent had violated D.R. 9-102(B)(4), requiring a lawyer to promptly pay to the client funds which the client is entitled to receive.

Charges II and III also alleged that respondent had violated D.R. 9-102(B)(1), requiring a lawyer to promptly notify a client of receipt of funds.

Finally, charge III alleged that respondent had also violated D.R. 2-106(A), prohibiting a lawyer from charging an illegal or clearly excessive fee.

Respondent's answer to petition for discipline was filed on March 24, 1987. The matter was referred to Hearing Committee [   ] on the same day. The testimony of one witness was taken by deposition on April 16, 1987. Two hearings were held, one on May 28, 1987, the other on July 14, 1987.

The report of the hearing committee was filed on April 28, 1988, recommending a suspension of two years. The hearing committee found in charge I that respondent had violated D.R. 1-102(A)(4), D.R. 1-102(A)(6) and D.R. 9-102(A), as alleged in the petition for discipline. The hearing committee found, however, that [A], respondent's employer, not only knew of respondent's actions, but directed them.

On charge II, the hearing committee found that respondent had violated D.R. 1-102(A)(6), D.R. 9-102(A), D.R. 9-102(B)(1), and D.R. 9-102(B)(4) by failing to inform the clients of the receipt of the mortgage payments and by commingling those funds. Again, the hearing committee found that respondent's acts were carried out with the knowledge and authority of [A]. The hearing committee

found that respondent had not violated D.R. 1-102(A)(4) and D.R. 9-102(B)(3) because no evidence of actual misrepresentation was presented.

Violation of D.R. 1-102(A)(6), D.R. 9-102(A), D.R. 9-102(B)(1) and D.R. 9-102(B)(3) were found by the hearing committee regarding charge III. It was concluded that respondent collected a judgment in favor of his client to satisfy a fee that he knew was disputed, failed to respond to the county bar association regarding the fee dispute and commingled the funds of his client with the office account funds. The hearing committee found no violation of D.R. 2-106(A) and D.R. 1-102(A)(4) in that the fee was not excessive nor was any misrepresentation proven.

In charges IV and V, the hearing committee found no violations of the disciplinary rules. In charge IV, the committee concluded that the evidence was not sufficient to support the allegation that respondent took fees without the knowledge and authorization of his client. In charge V, it was found that petitioner failed to sufficiently prove who transferred the funds from the escrow account to the office account.

Petitioner's brief on exceptions to the report of Hearing Committee [    ] was filed on May 18, 1988 in which it is argued that a two-year suspension would be inadequate considering the multiplicity of respondent's acts of misconduct and his lack of remorse. Petitioner seeks disbarment or a suspension of four to five years. In an appendix to the brief on exceptions, petitioner proposed additional findings of fact.

These matters were referred to the board and were adjudicated on June 27, 1988.

## FINDINGS OF FACT

(1) Respondent was admitted to the practice of law in the Commonwealth of Pennsylvania in October 1978.

(2) Respondent is 35 years old, is a graduate of [ ] High School, [ ] University and [ ] School of Law.

(3) Respondent practiced law commencing August 1978 with [A], [ ], Pa., and was employed there until May 25, 1984, when he submitted his resignation.

### The [B]-[C]-[D] Matter

(4) Respondent represented [ ] and [ ] [B] in litigation with respect to an action for specific performance filed by [ ] and [ ] [I].

(5) On May 14, 1984, respondent withdrew $3,000 from the [C] escrow account and $3,000 from the [D] escrow account and endorsed the checks "payable to the order of [respondent]" and deposited them into his personal checking account.

(6) On May 15, 1984, payment was made to [J], Esq., attorney for the [I], in the amount of $5,924,38 representing payment by respondent's clients to satisfy their court-ordered obligation to the [I].

(7) Respondent, prior to making the withdrawals from the firm's escrow account, discussed the matter with [A], Esq., his employer, who instructed respondent to pay the claim by withdrawing the money from the trust accounts.

(8) Respondent had neither permission nor authority, nor did respondent attempt to obtain permission or authority, from the personal representatives of the [C] estate or from [D] to withdraw the money.

(9) Respondent never informed his clients, the [Bs], who are living in Arizona, that they were required to make payment pursuant to a court order obtained by the [Is].

## The [E] Matter

(10) Respondent began representing [ ] and [ ] [E] in a mortgage foreclosure proceeding against [ ] and [ ] [K] and in subsequent bankruptcy proceedings filed by the [Ks].

(11) While the matter was before the bankruptcy court, periodic mortgage payments were made by the [Ks] and forwarded to respondent on behalf of the [Es].

(12) From January 12, 1983 to March 23, 1984, respondent received from the [Ks] 17 mortgage payments totalling $5,787.82.

(13) Respondent never notified the [Es] of the receipt of the money.

(14) Respondent did not have a written fee agreement with the [Es] nor any authorization to withhold fees directly from the funds received on their behalf.

(15) Between February 14, 1983 and April 11, 1984, 12 transfers took place from said funds held in trust for the [Es] to the office account of the law firm of [A], P.C.; $5,648.17 charged to fees and $139.65 charged to costs.

(16) The firm's accounts to which the money was transferred were the firm's property and were used by the firm to pay various firm expenses and salaries.

(17) The money so transferred was converted for the use and benefit of the law firm.

(18) Respondent directed the transfer of the said funds from the trust account to the office account.

(19) Respondent never advised the [Es] of the transfers of the funds and said transfers were made without the [Es'] knowledge or consent.

(20) Attorney [A] was aware that the monies received on behalf of the [Es] was being transferred to the firm's account.

## The [F] Matter

(21) Respondent represented Mr. and Mrs. [F] in a legal action against [L] and [M] on a cause of action arising out of an allegedly defective construction of the [Fs'] residence.

(22) Respondent estimated the fee would be between $1,000 and $1,500 to litigate plaintiffs' case. Plaintiffs received the definite impression from respondent that legal fees through a jury trial would not exceed $1,500.

(23) After receiving a verdict of $1,509 plus interest in favor of the [Fs], respondent billed the [Fs] for additional fees of $2,281 (over the estimated $1,500).

(24) Respondent was informed by the [Fs] by letter of April 19, 1982, that respondent's bill was disputed.

(25) Respondent entered judgments on the verdict and proceeded to collect the judgments, never informing the [Fs] of receipt of funds which were placed in escrow.

(26) Respondent, without the authorization of his clients, transferred the funds out of trust into the firm account toward payment of legal fees.

(27) The monies were converted to the use of the firm.

(28) The [Fs] filed a complaint with the fee dispute committee of the [ ] County Bar Association to which respondent failed to respond. When approached by the president of the bar association, re-

spondent assured him that he would rectify the situation, but never did.

(29) The [Fs] were never informed by respondent of his receipt of the funds nor were they given any accounting of the disposition of the funds.

### The [G] Matter

(30) Respondent represented [G] in various legal matters including domestic problems and an automobile accident case.

(31) There were various checks received by respondent from the no-fault insurance carrier for reimbursement of various medical expenses and wage loss.

(32) The total of the checks received on behalf of [G] was $7,115, out of which respondent disbursed $58 for costs, $1,620 to [G's] ex-wife for support, and $200 directly to [G].

(33) Disbursements were made between the dates of January 18, 1983 and December 9, 1983 in the amount of $5,237 from the trust account to the firm's office account.

(34) The funds were transferred to the office account to be used for the payment of office expenses and salaries.

(35) [G] offered to pay respondent but respondent advised him that payment would come out of the trust account and that everything would be settled at the conclusion of the case.

(36) The law firm was entitled to a fee for the services rendered to [G] and there is no dispute as to the reasonableness of the fees charged.

### The [H] Matter

(37) On or about May 1983, respondent represented [H] in a divorce action.

(38) On May 18, 1984, a check in the amount of $500 was sent to respondent representing a down payment on a proposed agreement with respect to the sale of the property of the parties.

(39) On May 22, 1984, respondent wrote a letter to opposing counsel setting forth that respondent's client should be paid interest. This counter-offer was unacceptable and by letter dated May 25, 1984, [N] counsel rejected the proposal and requested the $500 be returned.

(40) On May 21, 1984, the $500 that had been deposited in the firm's escrow account was transferred as a fee to the firm's office account.

(41) There was no evidence presented on the issue of who directed the secretary to make the transfer. The money was replaced by [A] on June 1, 1984.

## DISCUSSION

The board agrees with the hearing committee's disposition of the five charges. Misconduct was shown on charges I through III. No misconduct was proven relating to charges IV and V.

The facts show that the actions of respondent in the [B], [E], and [F] matters were in violation of the disciplinary rules. The transfer of funds from the [D] and [C] escrow accounts to satisfy the [B] matter is a clear example of a violation of D.R. 9-102(A) which requires that client funds be maintained in a separate account. The board also agrees with the finding of the hearing committee that respondent has violated D.R. 1-102(A)(4) and D.R. 1-102(A)(6). The misuse of the [C] and [D] funds for purposes totally unrelated to those matters and without consent to use those funds is conduct that adversely reflects upon the fitness of respondent to practice law.

The failure of respondent to notify the [Es] of the receipt of the mortgage payments from the [Ks] and the transfer of those funds from the escrow account to the office account of the firm without the consent of the [Es] is another example of commingling of client funds with firm funds in violation of D.R. 9-102(A). The fact that the [Es] had to make direct inquiry to the Bankruptcy Court in order to ascertain that funds had been paid to their lawyer, is further indication of respondent's violation of D.R. 9-102(B)(1) which requires a lawyer to notify his client promptly of the receipt of funds. This conduct also adversely reflects on respondent's fitness to practice law.

Unlike the [B] matter, the [E] matter did not involve the dishonest conduct of taking funds from escrow accounts to be used for an unrelated matter. The transfers from the [E] account were made under an erroneous claim to those funds as payment for services rendered. Therefore, this matter does not give rise to a violation of D.R. 1-102(A)(4).

The collection of funds on behalf of the [Fs] and the placing of those funds in the office account is yet another example of commingling of client funds in violation of D.R. 9-102(A). The fact that respondent was aware of the dispute over the fee charged to the [Fs] makes this a much more blatant example of commingling than was presented in the [E] matter. Respondent's failure to cooperate with the president of his county bar association and its fee dispute committee further adversely reflects on respondent's fitness to practice law.

The board agrees with the hearing committee that respondent has not violated D.R. 2-106(A) and D.R. 1-102(A)(4) by his conduct in the [F] matter. Petitioner stipulated that the fee, when viewed independently, was not excessive but was excessive in

light of the limitation placed upon the fee by the [Fs] at the outset of respondent's representation of the [Fs]. The limit claimed by the [Fs] and the bill alleged by respondent indicate the presence of a fee dispute only, not that the fee charged was excessive.

Once again, in the [F] matter, respondent placed funds in the office account under an erroneous claim of compensation for services rendered. As stated in the discussion of the [E] matter, this type of conduct was not in violation of D.R. 1-102(A)(4). Respondent's conduct did not rise to the level of dishonesty or fraud.

As indicated previously, the board concurs with the findings of the hearing committee that the evidence presented regarding the [G] and [H] matters was insufficient to conclude that there were violations of the disciplinary rules. The testimony of [G] indicates that he knew the fees would be satisfied from funds in his trust account. Unlike the [E] and [F], [G] knew funds were received on his behalf because he endorsed the checks that were deposited in the trust account. There was evidence that respondent discussed his fee arrangement with [G], unlike the evidence relating to the [E] and [F] matters.

In [H], the hearing committee found that no evidence was presented demonstrating who authorized the transfer of the down payment funds from the escrow account to the office account. Petitioner did not except to this finding made by the hearing committee. The board, therefore, concurs that no violations of the disciplinary rules were shown.

Respondent argued that his actions in the [B], [E] and [F] matters were carried out with the knowledge and at the direction of his superior, [A]. The hearing committee concluded that Attorney [A] did

know of respondent's actions and authorized him to so act. The board agrees with this finding of the hearing committee. However, the involvement of [A] in these matters does not excuse the acts of respondent. Respondent should have known his conduct was improper even if it was similar to the historical practices of [A] and condoned by [A]. Respondent had an independent obligation to conduct himself in an ethical manner regardless of the conduct of his superior.

Petitioner argues for a more severe sanction than a two-year suspension. There are, however, factors which the board considered in its conclusion supporting the recommended two-year suspension. Respondent's employment with [A] was his first employment out of law school. He was young and inexperienced in the day-to-day business operations of a law firm. The only example he had to follow was that of [A] who apparently operated his law firm routinely in a manner which may be violative of the disciplinary rules. Furthermore, respondent indicated his remorse when he argued, pro se, at oral argument before a panel of the disciplinary board. At that time, respondent conceded that a suspension of two years would be fair discipline and he was prepared to accept this punishment.

The case of *In re Anonymous No. 38 D.B. 75 and 67 D.B. 75,* 4 D.&C. 3d 371 (1977) is applicable. In that case your honorable court, by order dated April 22, 1977, did not approve a disciplinary board recommendation for disbarment, but rather imposed a suspension of three years. The case involved an attorney who failed to maintain a separate trust account; failed to have a written contingent fee agreement; retained money received on behalf of his client and used funds of his client for his own purposes; charged his client fees in excess of those

which he advised would be charged; failed to inform his client that he obtained a divorce for her; failed to take action to restore her maiden name as instructed; and advised the client that he placed funds received on her behalf in a separate interest-bearing account, which was not true. The attorney's misconduct in the *Anonymous* case was far more offensive than the conduct of the respondent herein. Notwithstanding that fact, your honorable court imposed a suspension of three years. To the extent that the case is an applicable precedent, a two-year suspension appears appropriate herein.

## RECOMMENDATION

Based upon the foregoing discussion, the disciplinary board of the Supreme Court of Pennsylvania recommends that respondent, [    ], be suspended from the practice of law for a period of two years from the time of imposition of the suspension. The board further recommends that, pursuant to rule 208(g), Pa.R.D.E., respondent be directed to pay the necessary expenses incurred in the investigation and prosecution of this proceeding.

Messrs. Douglas and Tumolo and Ms. Heh did not participate in the adjudication.

## ORDER

And now, September 9, 1988, upon consideration of the report and recommendations of the disciplinary board dated July 29, 1988, it is hereby ordered that [respondent] be and he is suspended from the bar of this commonwealth for a period of two years, and he shall comply with all the provisions of rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the disciplinary board pursuant to rule 208(g), Pa.R.D.E.